THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK,
*vs.* BOUGHRUM and others.

1. The equities between the holders of two second mortgages, each upon a distinct tract of land, both of which are embraced in a first mortgage, are equal, and each is bound to bear, in due proportion to the value of the tract mortgaged to him, the burden of the first mortgage.

2. A holder of a second mortgage has the right to foreclose it, and sell the property for the payment of his debt, subject to the lien of the first mortgage. If he becomes himself the purchaser, he is still entitled to all the equities to which he was entitled before the sale.

3. An announcement at the time of the sheriff's sale, under a foreclosure, by the holder of a second mortgage upon one parcel of land,

before the bidding commenced, that the premises would be sold "*subject to a mortgage of* $3000," does not create an equity in favor of a holder of a second mortgage upon another parcel, in a subsequent suit to foreclose a first mortgage, covering both, to have the tract so sold, first sold to raise the amount due on such first mortgage, before recourse is had to the land covered by his mortgage.

4. Nor does such announcement create a like equity in favor of the mortgagors, who still hold title to the tract on which was the second mortgage, on the ground that the announcement, "subject to the mortgage of $3000," &c., obviously caused the property to sell for a smaller sum than it otherwise would have brought.

---

On petition.   Motion to be permitted to answer.

*Mr. A. B. Bunting,* for the motion.

*Mr. A. Q. Keasbey,* contra.

THE CHANCELLOR.

The defendant, Edgar M. Mason, asks to be let in to answer, and that the mortgage debt of the complainants be apportioned between the two tracts of land described in the bill of complaint.   The bill is filed to foreclose a mortgage dated April 29th, 1870, for $3000, and interest, given to the complainants by the defendants, Rachel Boughrum and her husband, upon two tracts of land, one of about forty-eight acres, and the other of about ninety-eight acres, in Middlesex county.   After this mortgage was given, Mrs. Boughrum and her husband gave another mortgage, dated February 1st, 1871, for $1200, and interest, to Enoch V. Burke, on the tract of forty-eight acres.   This mortgage was assigned by Burke to Lovett H. Olmsted, by whom it was assigned to Mason.   April 18th, 1871, she and her husband conveyed this tract to Mary Meserole, who, with her husband, conveyed it, January 4th, 1872, to William Wright.   August 29th, 1871, Mrs. Boughrum and her husband gave a mortgage on the other tract, to J. Elmer Stout, for $1200, and interest.   This mortgage was subsequently assigned to the defendant, Andrew K. Cogswell, by whom it is now held.   The defendant,

Mason, was not made a party to this suit, originally, but subsequently applied to be made a party, in respect of his interest. By agreement between his solicitor and the solicitor of the complainants, he was made a party, and a decree *pro confesso* entered against him, with a reference to a master.

The master, by his report, disallowed Mason's claim, and the latter now seeks to be permitted to answer the bill, in order that he may properly represent and protect his equity. This application is resisted on the ground that he has no equity to protect. It appears that on or about February 28th, 1872, Mason instituted, in this court, proceedings for the foreclosure of his mortgage, making William Wright and his wife, then owners of the tract of forty-eight acres, parties defendant, but did not make the complainants parties to the suit. Those proceedings resulted in a decree in favor of Mason, under which the mortgaged premises were sold by the sheriff of Middlesex, under execution issued on the decree. At the sale, Mason bought the property for $1100, which sum was not sufficient to pay the amount due him on the execution. The description of the mortgaged premises, in the execution, is followed by these words : " Subject, however, to a certain mortgage of $3000, given by said party of the first part, to the Mutual Life Insurance Company of New York, bearing date April 29th, 1870, and recorded, &c." These words are found at the close of the description of the mortgaged premises, in Mason's mortgage. It is alleged that, at the sheriff's sale, an announcement was made, before the bidding commenced, to the effect that the premises would be sold subject to the mortgage of $3000.

It is insisted by the complainants, that an equity exists, under the circumstances, in favor of Cogswell, the holder of the second mortgage on the tract of ninety-eight acres, to have the tract of forty-eight acres sold to raise the amount due on complainants' mortgage, before recourse is had to the land covered by his mortgage. It is also claimed that the mortgagors, who still hold title to the tract of ninety-eight

acres, have a like equity, on the ground that the sale of the tract of forty-eight acres by the sheriff, under the announcement that it was subject to the complainants' mortgage of $8000, obviously caused the property to sell for a smaller sum than it otherwise would have brought.

It seems to me quite clear, that the equities between these second mortgagees were equal before the Mason foreclosure, and each was bound to bear, in due proportion to the value of the premises mortgaged to him, the burthen of the first mortgage. *Hoy* v. *Bramhall*, 4 C. E. Green 564. Has that foreclosure, or the sale under it, changed those equities? Mason's right to foreclose his mortgage, and sell the property for the payment of his mortgage, subject to the lien of the first mortgage, was undoubted. Cogswell was not a proper party to the suit. He had no interest in it. His right could not be affected by it. The purchaser of the property, whoever he might be, would, of course, take it, subject to the first mortgage, and be subject to precisely the same equities that Mason was before the suit was commenced. But it is insisted that the equities are changed because the property was sold by the sheriff as being subject to the first mortgage. This circumstance cannot affect Cogswell, nor can it Mrs. Boughrum and her husband, or either of them. Without the announcement, the property would have been sold subject to the first mortgage. The effect of the sale was to invest the purchaser with the title of the property, subject to whatever burthen the existence of the first mortgage might impose upon it; and the purchaser is entitled to all the equities, in that respect, to which Mason was entitled before the sale was made. That sale has not affected Mason's equity. It was said, on the argument, that the sheriff's deed conveys the land, subject to the first mortgage. This statement must be founded on the fact that, at the end of the description of the mortgaged premises, in the execution, the words above quoted, "subject," &c., are found. But the legal effect of the sale and deed, without these words, would have been to convey the property to the purchaser, subject to the first mortgage,

in the sense above stated—subject to its due share of the burthen of that mortgage.

The sheriff had no power to superimpose any further or other burthen in connection with, or in respect of it. And if he had had the power, and had exercised it, it would not have changed the equities.

In Hoy *v.* Bramhall, a grantor of one of the defendants had, after the execution of a mortgage upon land, purchased of the mortgagor, part of the mortgaged premises, the deed containing the following clause, after the habendum and before the covenants, "subject, however, to the payment, by said grantee, of all existing liens upon said premises;" and in another part of the deed, in a like position, was this clause: "This conveyance is made, subject, nevertheless, to the payment, by the said party of the second part, of all existing liens on said premises." In that case, the court say: "It may be that the language of the stipulations in these deeds, with reference to the complainants' mortgage, is not sufficient to create a covenant, on which a strictly personal liability may be based, but the effect is clearly that stated by the Chancellor, to make the part conveyed subject to its proper proportion of the encumbrances, so as to relieve, to that extent, that part of the mortgaged premises retained by the mortgagor; by force of which the lots conveyed, and those retained, must contribute towards discharging the common burthen, according to their relative values." It will be perceived that, in that case, the purchaser took the conveyance, subject *to the payment by him* of all existing liens.

As to the alleged injury to the Boughrums: They were mortgagors, who had parted with their interest in that property, and were, therefore, although bound in the bond the mortgage was given to secure, not necessary parties to the suit, unless in view of a decree for deficiency. When they parted with the property, they took the risk of such a foreclosure and sale of the property, at sheriff's sale, under execution, without their knowledge, and at a great sacrifice. I do not perceive that they have any equity, under the

circumstances, arising from the foreclosure and sale. But, the effect of the allowance of the claim now made by them and Cogswell, as against Mason, would be to compel Mason to bear the whole burthen of the first mortgage, and relieve them from any part of it. They are not entitled to such immunity.

The defendant, Mason, will be permitted to answer.